Gary A. **LASATER**, Benjamin S. Crass, Paul D. Wilson, Joseph Rex Shultz, Steven Tophan and Steve Irving, Plaintiffs and Respondents,

v.

Jay **GARDNER** and Charles R. Sadler, individuals; and Seagull Enterprises, Inc., d/b/a KMOR Radio, Defendants and Appellants.

No. 15959.

Supreme Court of Utah.

March 6, 1980.

Gary A. Frank, Murray, for defendants and appellants.

D. Kendall Perkins, Salt Lake City, for plaintiffs and respondents.

WILKINS, Justice:

This is an appeal from judgment granted plaintiffs in the Third District Court for the State of Utah, which ruled, so far as this appeal is concerned, that Defendant Jay Gardner (hereafter "Gardner") was an "employer" as that word is defined in the Fair Labor Standards Act of 1938,[1] and awarding Plaintiffs Gary A. Lasater (hereafter "Lasater") and Steve Irving (hereafter "Irving") unpaid wages, liquidated damages, and attorney's fees. Only issues relating to Lasater, Irving, and Gardner are before us on this appeal.

Lasater, Irving, and Gardner were employees of Defendant Seagull Enterprises, Inc., d/b/a KMOR Radio. Gardner was the radio station's vice president and its general manager. Plaintiffs alleged in their complaint that they were entitled to unpaid wages, liquidated damages, attorney's fees and costs on two theories: first, that the corporate defendant was the alter ego of the individual defendants and therefore the individual defendants were liable for wages owing; and second, that there was a con-tractual agreement between the parties under which wages were due and owing to the plaintiffs.

The only allegation which relates to the Fair Labor Standards Act appears in paragraph 1 of plaintiffs' first cause of action which alleges in part: "Jurisdiction is granted at court by 29 United States Code, § 216(b)."

The District Court granted judgment against Gardner personally based on the conclusion that he was an "employer" within the terms of § 203(d) of the Act. Defendant Gardner maintains that the District Court erred in applying the Fair Labor Standards Act to the services performed by Lasater and Irving in their employment. We agree.

According to the United States Supreme Court, the purpose of the Fair Labor Standards Act

. . . was to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage.[2]

The record here reflects that Lasater and Irving were each paid a salary which was equivalent to $3.00 per hour which was a rate higher than the minimum wage then in effect.[3]

■ In our view the Act was intended by Congress to prevent employers covered by the Act from paying less than minimum wage, and to permit employees to recover the minimum wage or overtime pay due to them. This case does not present either of these matters.

■ Even assuming for the sake of argument that the Act applies, the burden of establishing the application and coverage of the Act lies with plaintiffs.[4] Crucial to

1. 29 U.S.C. § 201, et seq.

2. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945), n.17, 324 U.S. at 707, 65 S.Ct. at 902.

3. From January 1, 1975 through December 31, 1975, the minimum wage was $2.10 per hour and after December 31, 1975 for any applicable period it was $2.30 per hour. 29 U.S.C. § 206(a)(1).

4. *Rodgers v. Wright's Provisions, Inc.*, 310 F.Supp. 136 (D.S.C.1969).

meeting this burden is proof that the plaintiff-employee was "engaged in commerce or in the production of goods for commerce." [5]

The following definitions from the Act are applicable:

"Commerce" means trade, commerce, transportation, transmission, or communication among the several States or *between any State and any place outside thereof.* (Emphasis added.) [6]

"Produced" means produced, manufactured, mined, handled, or in any other manner worked on in any State . . [7]

"Goods" means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof . . . [8]

We find no evidence in the record that plaintiffs were "engaged in commerce or in the production of goods for commerce." While the operation of a radio station could arguably come under the purview of the Act, an interstate connection must nevertheless be shown. Plaintiffs failed wholly to establish such a connection for KMOR Radio. In fact the affidavit of Gardner submitted in support of his Motion for New Trial indicates that KMOR Radio was only authorized by the Federal Communications Commission to transmit within the State of Utah, and indeed the authorized transmission power for the station was insufficient to transmit beyond the borders of Utah. There were no findings or conclusions by the District Court on the issues of alter ego or contract, although the Court did not indicate from the bench that there was no evidence to support an alter ego theory. Furthermore, since there is no evidence in the record to support the theory that the Fair Labor Standards Act is applicable to plaintiffs' claims, the judgment of the District Court must be reversed as to Gardner. The remainder of the Judgment as entered will, of course, stand since that portion of the Judgment was not before us on this appeal.

Reversed. Costs to Defendant Gardner.

MAUGHAN, HALL and STEWART, JJ., concur.

CROCKETT, C. J., concurs in the result.